FILED
2022 Apr-05  PM 03:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| JOSEPH C. ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.: 2:21-cv-00439-JHE |
| CITY OF BESSEMER, et al.,[1] | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OPINION AND ORDER[2]

Through his second amended complaint, Plaintiff Joseph C. Robinson ("Robinson" or "Plaintiff") brings this action under 42 U.S.C. § 1983 and various causes of action under Alabama law against Defendants City of Bessemer (the "City"), Michael Roper ("Roper"), the Estate of Robbie Tackett ("Tackett"), and Charles McKenna ("McKenna"). (Doc. 29). The City and Roper have moved to dismiss Robinson's claims against them for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Docs. 32 & 37). Robinson opposes both motions, (docs. 35 & 40), and the City has filed a reply in support of its motion, (doc. 36). For the reasons stated below, the City's motion is **GRANTED IN PART** and **DENIED IN PART**, and Roper's motion is **GRANTED**.

---

[1] On August 6, 2021, the undersigned dismissed Robinson's claims against the Bessemer Police Department. The Clerk is **DIRECTED** to update the docket to reflect that the Bessemer Police Department has been terminated and to update the style of this case to "Robinson v. City of Bessemer, et al." The parties are **ORDERED** to use this new case caption in all future filings.

[2] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 20).

## I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.; accord Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

To that end, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678. (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 557). Further, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "[A] plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts,

when they occurred, and who engaged in them." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (internal quotation marks omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

The court accepts all factual allegations as true on a motion to dismiss under Rule 12(b)(6). *See, e.g., Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 556 U.S. at 678.

## II. Background and Procedural History

### A. Factual Background[3]

On October 17, 2018, Robinson was driving home from school when Bessemer Police Department ("BPD") officers pulled him over. (Doc. 29 at ¶ 7). After Robinson asked why he had been pulled over, officers forcibly pulled Robinson from his car and placed him in a chokehold and slammed him to the ground. (*Id.* at ¶¶ 7-8). Robinson did not resist or struggle. (*Id.* at ¶ 9). Tackett assaulted Robinson, causing Robinson to sustain a severe concussion and muscle strains with bruising and scarring. (*Id.*). McKenna stood by and watched and at some point sprayed Robinson in the face with mace. (*Id.* at ¶ 10). McKenna also helped to cover up the incident by falsifying records and lying to investigators. (*Id.*).

### B. Procedural History

On October 16, 2020, Robinson filed this action in the Circuit Court of Jefferson County, Alabama. (Doc. 1-1). On March 26, 2021, the defendants named in the original complaint

---

[3] The factual background is taken from Robinson's second amended complaint, (doc. 29).

3

removed the case to federal court.  (Doc. 1).  Several days later, the City and BPD each filed a motion to dismiss.  (Docs. 4 & 5).  Defense counsel also filed a motion to dismiss on behalf of Roper and the twelve fictitious parties.  (Doc. 6).

On April 21, 2021, Robinson filed an amended complaint, (doc. 11), mooting the motions to dismiss, (*see* doc. 13).  It asserted seven counts: (1) a § 1983 excessive force count against unspecified defendants, (*id.* at ¶¶ 19-21); (2) an assault and battery count against Tackett and McKenna, (*id.* at ¶¶ 22-23); (3) an intentional infliction of emotional distress count against unspecified defendants, (*id.* at ¶¶ 24-25); (4) a negligence count against the named and fictitious defendants, (*id.* at ¶¶ 26-29); (5) a § 1983 failure to train and supervise count against the City, BPD, and Roper, (*id.* at ¶¶ 30-33); (6) a § 1983 failure to enact/enforce policy count against the City, BPD, and Roper, (*id.* at ¶¶ 34-38); and (7) a § 1983 false arrest, false imprisonment, and unlawful detention count against unspecified defendants, (*id.* at ¶¶ 39-41).

All defendants again moved to dismiss the complaint: BPD because it is not a legal entity subject to suit, (doc. 14); Roper for failure to state a claim, lack of jurisdiction, and improper service, (doc. 15); the City based on the statute of limitations, municipal immunity, and for failure to state a claim as to the § 1983 claims, (doc. 16), and McKenna and Tackett (who had died during the pendency of the litigation) for improper service, (docs. 18 & 22).  On August 6, 2021, the undersigned entered a memorandum opinion addressing those motions.  (Doc. 27).  The undersigned granted BPD's motion in full and denied McKenna's and Tackett's motions as premature.  (*Id.*).  The undersigned also granted Roper's and the City's motions based on Robinson's failure to state § 1983 claims against them, but allowed Robinson an opportunity to file an amended complaint attempting to set out such claims.  (*Id.*).  The undersigned also granted

the City's motion as to municipal immunity, dismissing with prejudice the state law claims asserted against it.  (*Id.*).

On August 20, 2021, Robinson filed his second amended complaint.  (Doc. 29).  McKenna has answered the complaint, (doc. 39), but the City and Roper have again moved to dismiss it. (Docs. 32 & 37).

## III. Analysis

Although it still retains some characteristics of a shotgun pleading, the current iteration of Robinson's complaint is clear enough that the undersigned can discern the causes of action and against which Defendant Robinson asserts each.  The second amended complaint contains the following counts: (1) Count I, a § 1983 excessive force count against Tackett, McKenna, the City, and Roper, (doc. 29 at ¶¶ 19-21); (2) Count II, an assault and battery count against Tackett, McKenna, the City, and Roper, (*id.* at ¶¶ 22-23); (3) Count III, an intentional infliction of emotional distress ("IIED") count against Tackett, McKenna, the City, and Roper, (*id.* at ¶¶ 24-25); (4) Count IV, a negligence count against Tackett, McKenna, the City, and Roper, (*id.* at ¶¶ 26-29); (5) Count V, a § 1983 failure to train and supervise count against Tackett, McKenna, and Roper, (*id.* at ¶¶ 30-33); (6) Count VI, a § 1983 failure to enact/enforce policy count against the City and Roper, (*id.* at ¶¶ 34-38); and (7) Count VII, a § 1983 false arrest, false imprisonment, and unlawful detention count against Tackett, McKenna, the City, and Roper, (*id.* at ¶¶ 39-41).  Since only the City and Roper have moved to dismiss the complaint, the undersigned analyzes only those claims (or portions of claims) brought against them.

**A. Section 1983 Claims Against the City and Roper in His Official Capacity[4]**

Robinson's claims against the City present four different theories of liability, but each must cross the same threshold to get there.  "[A] municipality cannot be held liable under § 1983 on a respondeat superior theory."  *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978).  This means that, "to impose liability on a municipality under § 1983[, a plaintiff must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Board of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997).  In this Circuit, to support municipal (or *Monell*) liability under § 1983, a plaintiff must show "(1) a violation of his constitutional rights; (2) that the City had a custom or policy that was deliberately indifferent to that constitutional right; and (3) a causal link between the City's policy or custom and the violation."  *Sharp v. City of Huntsville, AL.*, 730 F. App'x 858, 860 (11th Cir. 2018) (citing *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).  The identified policy or custom must be "the moving force behind

---

[4] Official capacity claims "'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690 n.55 (1978)).

The undersigned assumes Robinson only asserts official-capacity claims against Roper. The previous order dismissed any individual-capacity claims against Roper without prejudice, stating: "If Robinson files an amended complaint, he must specifically identify which defendant or defendants is being sued under which count and indicate in which capacity (individual or official) each defendant is being sued."  (*Id.* at 21-22).  Robinson's second amended complaint does not comply with the previous order's instructions as to Roper, (*see* doc. 29 at ¶ 5), so it is still unclear whether Robinson alleges any individual-capacity claims against Roper.  That said, Roper asserts Robinson has failed to make out any non-conclusory allegations supporting his individual liability.  (Doc. 37 at 3-4).  In his response, Robinson defends only the *Monell* claims against Roper—i.e., the official-capacity claims.  (*See generally* doc. 40).  Robinson has therefore abandoned any individual-capacity claims against Roper, and to the extent the complaint attempts to assert them, they are due to be dismissed with prejudice.

the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 380 (1989). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).

The previous memorandum opinion contained the following analysis of Robinson's *Monell* claims against the City:

> There are no non-conclusory allegations in the amended complaint to support *Monell* liability against the City.   As far as named defendants, the complaint's specific factual allegations concern only Tackett and McKenna.  (*See* doc. 11 at ¶¶ 7-10, 12).  The remainder of the paragraphs listed under the "Statement of Fact" section are wholly conclusory, are legal conclusions, or both, including the only two applicable to the City: that the city is "responsible and duty-bound to train and supervise police officers; to develop, enact and enforce policy(ies) regarding the treatment of, and use of force involving drivers," (*id.* at ¶ 16), and that the City (along with others) "proximately caused and/or were the moving force behind the clearly defined constitutional deprivations," (*id.* at ¶ 17).
>
> As to paragraphs under the complaint's specific counts:
>
> - Counts I (excessive force) and Count VII (false arrest, false imprisonment, and unlawful detention) do not mention the City and include nothing involving a policy or custom, (*see id.* at ¶¶ 19-21, 39-41).
>
> - Count V (failure to train and supervise):
>
>   o mentions Tackett and McKenna "acted under the supervision, direction and control of their superior officers with the City of Bessemer, (*id.* at ¶ 30), which is a respondeat superior allegation and not a policy or custom allegation;
>
>   o alleges the City "negligently and/or wantonly with reckless disregard for the clearly established constitutional rights of Plaintiff, failed or refused to properly train" Tackett and McKenna, (*id.* at ¶ 31), which is a legal conclusion; and
>
>   o states the City "had Complaint's [sic] filed prior showing a custom or policy of indifference," (*id.* at ¶ 32), which mentions the words "policy" and "custom" but is wholly conclusory.

7

- Count VI (failure to enact and/or enforce policy):

  o states the City has a duty "to develop, implement and enforce policies and procedures that do not cause clearly established constitutional deprivations," (*id.* at ¶ 34), which is a legal conclusion;

  o contends the City "was on notice that adaption of inadequate policies and procedures regarding training and oversight of police officers, and/or failure to adopt adequate policies and procedures regarding the training and oversight of police officers, would likely cause and/or encourage police officers to beat, abuse, and/or otherwise brutalize and/or use excessive force on detainees, arrestees and/or inmates," (*id.* at ¶ 35), which is also a legal conclusion;

  o alleges the City "adopted policies, procedures, customs, or practices that lead to the inadequate training and supervision of police officers which contributed to, and/or proximately caused, Defendants Robbie Tackett and Charles McKenna to unconstitutionally beat and choke Plaintiff, and Defendants City of Bessemer and Bessemer Police Department by and through its agent, Michael Roper, and/or fictitiously described defendants to engage in the conspiracy to cover up the assault on Plaintiff and otherwise deprive him of his aforementioned constitutionally protected rights," (*id.* at ¶ 36), which contains legal conclusions and is also conclusory because it does not identify any of the alleged policies or indicate in any way how the policies caused any of the effects Robinson describes;

  o indicates, in the alternative, the City "failed or refused to adopt policies, procedure, customs, or practices" consistent with the effects Robinson describes in ¶ 36, which is inadequate for exactly the same reasons ¶ 36 is inadequate; and

  o states the City's acts and omissions "were perpetrated under color of law and deprived Plaintiff of his civil rights," causing him to suffer harm, (*id.* at ¶ 38), which is a legal conclusion.

(Doc. 27 at 16-17).  The undersigned determined that there were no non-conclusory allegations

against the City to support *Monell* liability, so the complaint failed to state a claim against the City.

(*Id.* at 18) (citing *L.S. v. Peterson*, 982 F.3d 1323, 1330 (11th Cir. 2020)) ("A count supported only by conclusory allegations necessarily fails to state a claim.").

To attempt to remedy the deficiencies in his first amended complaint, Robinson has added a number of other allegations against the City to the second amended complaint, both in the facts section and within each count.  In the facts section, Robinson states Tackett and McKenna were "following the unlawful customs, policies, and practices maintained by Defendant Roper and the City of Bessemer."  (Doc. 29 at ¶ 9).  Robinson never describes (here or elsewhere) what those "customs, policies, and practices" are, so this is another conclusory allegation.  Similarly, when Robinson contends "[t]he  Bessemer Police Department under the command of Chief Michael Roper has over the years employed policies and customs allowing its officers to unlawfully detain citizens and exercise force in a manner exceeding that which is necessary to lawfully detain a suspect in violation of the Constitution," (*id.* at ¶ 13), Robinson does not clarify at all what "policies and customs" are at issue.  Finally, Robinson's remaining allegations about the City are simply legal conclusions, stating the City and Roper "proximately were the moving force behind the clearly defined constitutional deprivations" and "knew or should have known their officers were unskilled and acting negligently during traffic stops," (*id.* at ¶ 17).  None of these provide factual support for the City's liability because they are simply "a formulaic recitation of the elements of a cause of action," *Iqbal*, 556 U.S. at 678.

Similarly, many of the new allegations in the individual counts are boilerplate recitations of the law that would give rise to the City's responsibility, or are simply conclusory.  In Count I, Robinson states: "Defendants, City of Bessemer and Michael Roper authorized, ratified, and/or condoned Defendants Tackett and McKenna's actions thereby making them liable of the injuries Plaintiff sustained. They were aware or should have been aware of the customs of excessive force

9

used by their officers based on the complaints and reports the officers have received regarding their conduct and behavior of their officers." (*Id.* at ¶ 19). In Count V, Robinson asserts: "Defendant Michael Roper negligently and/or wantonly with reckless disregard for the clearly established constitutional rights of Plaintiff, failed or refused to properly train those under his command including, Defendants, Tackett and McKenna." (*Id.* at ¶ 31). Neither of these is sufficient to support *Monell* liability. And the only plausible reference to the City in Count VII is an allegation that "Defendants" generally "refus[ed] or neglect[ed] to prevent" his false arrest, (*id.* at ¶ 40), which is a legal conclusion that does not even bear on the standard to impose municipal liability.

Robinson does include a new factual allegation in Count V that "Defendant Roper has received and reviewed complaints filed prior by the City's citizens regarding excessive force and abuse of power which shows a custom or policy of indifference." (*Id.* at ¶ 32). Reading the complaint favorably to Robinson, this (and perhaps the similar reference in Paragraph 19) ties into the only specific examples in the complaint, which are in Paragraph 35 of Count VI. In that paragraph, Robinson provides two incidents in which BPD allegedly used excessive force, which Robinson says is a pattern of conduct ignored by the City. First, Robinson points to Marcus Underwood, who sued the City in 2015 for excessive force after officers shot him in his slow-moving car. (*Id.* at ¶ 35). Second, Robinson indicates Nancy Buttram "reported the use of excessive force to Defendant, City of Bessemer and its police chief at the time of her incident." (*Id.*). The problem for Robinson is that the court cannot infer evidence of a municipality being sued is evidence of a pattern of civil rights violations. *See Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) ("[T]he number of complaints bears no relation to their validity"); *Dubose v. City of Hueytown*, No. V-15-BE-852-S, 2016 WL 3854241, at *16 (N.D. Ala. July 15, 2016) ("[M]ere

10

allegations of constitutional deprivation by officers, standing alone, do not support a failure to train

claim against the city employing them.").  Even assuming these two incidents qualify as examples

of unconstitutionally excessive force,[5] though, the Eleventh Circuit has held "that a plaintiff could

not establish a *Monell* claim when he could not point to any other incidents involving similar

facts."  *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005).  There is nothing in

the second amended complaint to indicate the facts in either *Buttram* or *Underwood* are similar to

the facts in this case, and a review of the complaints in those cases (of which the undersigned takes

judicial notice) shows there is minimal factual overlap as to the conduct alleged here.  In particular,

neither case involved officers conducting a traffic stop.  Robinson does not explain how a policy

applicable to traffic stops like the one in his case would apply to the factual scenarios in *Buttram*

or *Underwood*, or alternatively how a policy that led to the alleged constitutional deprivations in

those cases applies to a traffic stop.  *See Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th

Cir. 2009) (cleaned up) ("A pattern requires similarity and specificity; prior indications cannot

simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in

question.")

---

[5] Neither Underwood's case nor Buttram's case actually resulted in a finding that excessive force had occurred.  As the City points out, the undersigned granted summary judgment to the defendants in *Underwood v. City of Bessemer*, Case No. 2:15-CV-01585-JHE, 2019 WL 4392523 (N.D. Ala. Sept. 12, 2019).  On appeal, the Eleventh Circuit found that factual issues precluded finding that there was no Fourth Amendment violation, but that the officers were nevertheless entitled to summary judgment on the issue of qualified immunity.  *Underwood v. City of Bessemer*, 11 F.4th 1317 (11th Cir. 2021).  Thus, it affirmed.  In the other case, *Buttram v. City of Bessemer, et al.*, Case No. 2:17-00846-ACA (N.D. Ala.), the parties reached a settlement through mediation and stipulated to the case's dismissal.

Robinson attempts to get around this by pointing to *Owens v. City of Fort Lauderdale*, 174 F. Supp. 2d 1298 (S.D. Fla. 2001), which he argues stands for the proposition that *Monell* liability can be demonstrated by showing "that there has been a deliberate indifference by continued adherence to an approach that [policymakers] know or should know has failed to prevent tortuous conduct by inadequately trained employees." (Doc. 35 at 4).  In part, *Owens* involved allegations that a municipality violated the plaintiffs' decedent's constitutional rights by failing to train officers.  A failure to train claim (such as the one Robinson asserts in Count V) arises "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388-89.  A plaintiff must show that a municipality (1) knew of the need to train in a particular area, and (2) made a deliberate choice not to do so. *Brown*, 520 U.S. at 407-09.  In *Owens*, the plaintiffs contended the municipality violated the decedent's constitutional rights by failing to "either prohibit the use of neck restraints by the off-duty police officers or to train the officers in the safe application of a neck restraint." 174 F. Supp. 2d at 1311.  The specifics in *Owens* are what Robinson lacks here, because he has not pointed to any particular area in which the City knew it should train its officers but deliberately declined to train them.

Read alone or in combination, none of the allegations in the second amended complaint can support the existence of a policy or custom required to support *Monell* liability.  Therefore, the City's and Roper's motions to dismiss are due to be granted as to any § 1983 claims against the City and against Roper in his official capacity.

### B. State Law Claims Against the City

As the City notes, (doc. 32 at 2), some of the state law claims Robinson now attempts to assert against it—intentional infliction of emotional distress and negligent training and

supervision—were dismissed with prejudice, without leave to replead. (Doc. 27 at 14-15, 21). Robinson has offered no reason to reconsider that decision and does not even address this fact in his response. The undersigned will not separately discuss these claims, but to the extent the amended complaint attempts to reassert these claims they are once again dismissed with prejudice.

The remaining state law claims against the City appear to be an assault and battery claim and a negligence claim, both derivative of Tackett's and McKenna's actions.[6] In the assault and battery claim, Robinson alleges "Defendants Tackett and McKenna's aforementioned acts of unwanted choking, slamming, touching, beating, spraying with mace, and kicking of Plaintiff were without reasonable justification or excuse and were committed negligently with reckless disregard towards Plaintiff's right to be free from such acts." (Doc. 29 at ¶ 22). Robinson also alleges the City and Roper "should have been aware of their officers' assaultive conduct and behavior based on the complaints and reports they have received regarding their officers have received." (*Id.* at ¶ 23). Robinson's negligence claim is essentially a recasting of the same allegations: that "Robbie Tackett and Charles McKenna's aforementioned acts of unwanted touching of Plaintiff were without reasonable justification or excuse breached said defendant's duty to the Plaintiff including but not limited the Defendant's duty not to touch Plaintiff in the manner they did," (*id.* at 26), and

_____

[6] It is arguable whether the complaint even asserts municipal liability based on this theory of vicarious liability. The only allegations in Count II concerning the City is that it and Roper "should have been aware of their officers' assaultive conduct and behavior based on the complaints and reports they have received regarding their officers have received." (Doc. 29 at ¶ 22). And the only allegations in Count IV concerning the City is that it and Roper "negligently failed to correct customs and practices throughout the department on the use of excessive force." (Doc. 29 at ¶ 28). Both appear to be failure to adequately supervise or train claims. Nevertheless, the undersigned assumes Robinson intends to assert vicarious liability theories based on his response to the City's motion to dismiss. (*See* doc. 35 at 1-2).

13

that Defendants "negligently, carelessly, recklessly, willfully, and wantonly committed tortious and harmful acts against the Plaintiff, thereby causing to suffer injuries," (*id.* at ¶ 29).

As previously stated, in Alabama, municipalities are generally immune from tort liability. *Ex parte City of Bessemer*, 142 So. 3d 543, 550 (Ala. 2013). However, the Alabama Code contains an exception to this general rule for injuries or wrongs caused by "the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty . . . ." ALA. CODE § 11-47-190. The Alabama Supreme Court has consistently held this provision exempts a municipality from liability for its agents' intentional torts. *Aliant Bank v. Four Star Invs., Inc.*, 244 So. 3d 896, 927 (Ala. 2017) (quoting *Altmayer v. City of Daphne*, 613 So. 2d 366, 369 (Ala. 1993)). *See also Hilliard v. City of Huntsville,* 585 So. 2d 889, 892 (Ala. 1991) (explaining that "to construe this statute to include an action for wanton conduct would expand the language of the statute beyond its plain meaning."); *Walker v. City of Huntsville,* 62 So. 3d 474, 501 (Ala. 2010).

Although assault and battery and negligence are legally distinct torts, the issue here is not whether either Tackett or McKenna actually committed the torts alleged in the second amended complaint. Instead, it is whether the factual allegations in the complaint fall inside or outside the protections of § 11-47-190; in other words, whether they constitute "neglect, carelessness, or unskillfulness."[7] *See Fowler v. Meeks*, 569 F. App'x 705 (11th Cir. 2014) (analyzing application of § 11-47-190 to Alabama state law negligence claim by reference to factual allegations, not

---

[7] The undersigned notes Robinson's legal conclusions with respect to the officers' mental states —e.g., that they acted "negligently, carelessly, recklessly, willfully, and wantonly"—are confusing to the point of incoherence, so the undersigned could not simply rely on his characterizations in any case.

nomenclature).  "Under Alabama law, excessive force during an arrest, or assault and battery, can constitute 'unskillfulness' under § 11-47-190 if it 'falls below the response which a skilled or proficient officer would exercise in similar circumstances.'" *Id.* at 708 (citing *City of Birmingham v. Thompson,* 404 So. 2d 589, 592 (Ala. 1981); *Lee v. Houser*, 148 So. 3d 406, 419 (Ala. 2013)).

Robinson's opposition to municipal immunity rests on his complaint's legal conclusions Tackett and McKenna (1) acted "negligently with reckless disregard towards Plaintiff's right to be free from such acts" in the assault and battery count, (doc. 29 at ¶ 7), and (2) in the negligence count, breached their "duty to not touch Plaintiff in the manner they did," acting "negligently, carelessly, recklessly, willfully, and wantonly," (*id.* at ¶¶ 26, 29).  (Doc. 35 at 2-3).  Robinson argues Tackett and McKenna "were unable to properly detain and control the Plaintiff and allowed their frustrations and emotions to cloud their judgment when engaging with the Plaintiff."  (*Id.* at 3).  But the factual allegations in Robinson's second amended complaint are what control, not the legal conclusions.[8]

Notwithstanding the Alabama Supreme Court's statement in *Thompson*, courts faced with excessive force scenarios at summary judgment have often concluded § 11-47-190 bars such claims because the facts revealed intentional conduct.  *See, e.g., Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 743 (11th Cir. 2010) (upholding finding of municipal immunity at summary judgment stage when evidence indicated use of pepper spray and other force was intentional); *Lambert v. Herrington*, No. CV 1:19-00854-KD-B, 2021 WL 566528, at *21 (S.D. Ala. Jan. 22, 2021) (granting summary judgment to municipality based on § 11-47-190 when officer pulled one

---

[8] For the same reason, the undersigned rejects the City's argument in its reply brief that Robinson's statement the acts "were committed negligently with reckless disregard," (doc. 36 at 2) (citing doc. 35 at 2), resolves the issue in its favor.

plaintiff by her shirt and kicked and choked the other plaintiff).  This case is not at that stage.

However, the Eleventh Circuit has reversed the denial of a motion to dismiss on municipal liability

grounds in *Fowler*, an unpublished case in which a plaintiff asserted an Alabama state law

negligence claim.  In that case, officers performing a drug raid pulled the plaintiff (who was not

actually a subject of the raid) from his car, handcuffed him, threw him to the ground, threatened

him, and kicked him, all with guns drawn and pointed at him.   *Fowler*, 569 F. App'x at 706-07.

In what it termed a "close call," the district court denied the defendant municipality's motion to

dismiss without prejudice on the basis that "§ 11-47-190 did not provide immunity from claims of

negligence or unskillfulness for the manner in which the officers investigated and arrested" the

plaintiff.  *Id.* at 707.  Reversing, the Eleventh Circuit found that the facts alleged in the complaint

"constitute more than negligence; they show deliberate actions akin to intentional torts":

> According to Fowler, task force members pulled him from his car, threw him to the
> ground with guns pointed at him, and repeatedly kicked him even after he cried out
> in pain and attempted to inform the officers of his medical condition. The task force
> members knew he was not the subject of the drug raid, nor had he resisted the
> officers in any way. *See Brown,* 608 F.3d at 742–43 (concluding that the facts
> showed that the officer acted intentionally when spraying the plaintiff with pepper
> spray during an arrest). Thus, because the facts show intentional conduct, the City
> is entitled to immunity under § 11-47-190.

*Id.* at 708.

The only arguably contrary authority Robinson cites (in fact, the only authority he cites at

all) is *Brown v. State*, 25 So. 744 (1899), in which the court stated: "Where the intent rests in

inference to be deduced from the facts proven, its existence or nonexistence must be submitted to

the jury for their determination."  (Doc. 35 at 3) (citing *Brown v. State*, 25 So. at 745).  *Brown* was

a criminal case involving the existence of the specific criminal intent required to send a sexual

assault charge to the jury, so its application to a civil case involving statutory immunity is limited.

16

Further, it does not account for the authority above deciding the matter of immunity at the summary judgment and motion to dismiss stages. That said, two reasons suggest Robinson's claims against the City should proceed in this case. First, the Alabama Supreme Court has held that "where a plaintiff alleges a factual pattern that demonstrates 'neglect, carelessness, or unskillfulness' the plaintiff has stated a cause of action" sufficient to survive § 11-47-190 irrespective of how the claims are pleaded. *Borders v. City of Huntsville*, 875 So. 2d 1168, 1183 (Ala. 2003). The City's sole argument is that Robinson's allegations of being "choked, slammed, touched, beaten, kicked and sprayed with mace by the Officers Tackett and McKenna" are "clearly intentional acts for which the City cannot be held liable." (Doc. 32 at 5). The majority of these allegations relate only to Tackett's conduct. The allegations in the complaint do not support that *McKenna* choked, slammed, touched, beat, or kicked Robinson. Instead, Robinson alleges McKenna failed to intervene when Tackett assaulted him and sprayed mace in Robinson's face at some unspecified point during the encounter. Viewed favorably to Robinson, these are just as plausibly neglectful, careless, or unskillful acts as they are intentional acts, whether they fall under a general theory of negligence or assault and battery.[9]

Second, although this case is similar to the unpublished *Fowler* case—the most prominent example the undersigned has located of a court finding immunity at the motion to dismiss stage—

---

[9] In its reply, the City points to an unpublished decision by the Eleventh Circuit stating "the negligent use of excessive force is an oxymoron." (Doc. 36 at 2) (citing *Secondo v. Campbell*, 327 Fed. Appx. 126, 131 (2009)). As the City acknowledges in its explanatory parenthetical, *Secondo* was based on Florida law. However, black-letter Alabama law indicates that, at least in some circumstances, "an officer using excessive force" may commit "a negligent tort which falls within the definition of 'unskillfulness' . . . even though it means that a battery may be committed by 'unskillfulness,' i.e., a form of negligence." *Thompson*, 404 So. 2d at 590. The Eleventh Circuit's nonbinding commentary on Florida law cannot override this controlling authority.

the undersigned finds *Fowler* is distinguishable enough that it does not support a similar finding here. *Fowler* is nonbinding, and, as noted above, the facts in this case are less clear than those in *Fowler*. Additionally, and more importantly, the defendant in *Fowler* also moved to dismiss based on state-agent immunity under Ala. Code § 6-5-338, which immunizes a police officer performing a discretionary function within the scope of his employment from tort claims. *Fowler*, 569 F. App'x at 706 (citing ALA. CODE § 6-5-338(a); *Brown,* 608 F.3d at 741-42). Because a municipality's immunity under § 6-5-338(a) is derivative of the officer's liability, *Borders*, 875 So. 2d at 1183, a successful state-agent immunity defense also immunizes the municipality from suit for the underlying claims. The Eleventh Circuit found state-agent immunity under § 6-5-388 would bar negligence claims against the officers (and thus the municipality) and municipal liability under § 11-47-190 would bar claims against the municipality for the officers' intentional actions. *Fowler*, 569 F. App'x at 709. Thus, "in light of the interplay between § 11-47-190 and § 6-5-338" it saw "no set of facts against the City that would enable Fowler to defeat the City's immunity." *Id.* The interplay between these statutes at the motion to dismiss stage is not material here because the City has not asserted a state-agent immunity defense on behalf of either Tackett or McKenna.

Based on the foregoing, the undersigned will allow Counts II and IV to proceed against the City.

### C. State Law Claims Against Roper

The final set of claims are state law claims asserted against Roper alone. In Count II, the only allegation concerning Roper's involvement in the assault and battery is that he "should have been aware of [his] officers' assaultive conduct and behavior based on the complaints and reports [he has] received regarding [his] officers . . . ." (Doc. 29 at ¶ 22). In Count III, the IIED count, Robinsons states Roper "authorized, ratified, and/or condoned Defendants Tackett and McKenna's

actions thereby making him liable of the injuries Plaintiff sustained. He was aware or should have been aware of the customs, practices, and conduct of his officers based on previously received complaints and reports. He allowed through custom and practice the deprivation and violation of the Plaintiff's liberty." (*Id.* at ¶ 24). And in Count IV, the negligence count, Robinson states Roper "negligently failed to correct customs and practices throughout the department on the use of excessive force." (*Id.* at ¶ 28). Each of these is purely conclusory and identifies nothing about Roper's conduct that connects him to the encounter at issue.

To the extent Robinson attempts to impose supervisory liability on Roper, "the doctrine of respondeat superior does not hold supervisors, as co-employees, vicariously liable for the torts of their subordinates." *Ware v. Timmons*, 954 So. 2d 545, 555 (Ala. 2006). And, as previously stated, "Alabama recognizes no cause of action against a supervisor for negligent failure to supervise or train a subordinate." *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1315 (S.D. Ala. 2001). Robinson does not offer any counterargument or alternative theory of liability. (*See generally* doc. 40). Accordingly, he has failed to state a claim with respect to Roper on any of the state law claims he asserts, and they are due to be dismissed.

### IV. Conclusion

The City's motion to dismiss, (doc. 32), is **GRANTED IN PART** to the extent that Robinson's claims against it in Counts I, III, V, and VI, as well as any negligent supervision and training claim in Count IV, are **DISMISSED WITH PREJUDICE**. It is **DENIED** to the extent that Robinson's claims against it in Counts II and IV (except to the extent dismissed above) proceed. Roper's motion to dismiss, (doc. 37), is **GRANTED**, and Robinson's claims against Roper are **DISMISSED WITH PREJUDICE**.

The parties are **ORDERED** to hold a conference pursuant to Fed. R. Civ. P. 26(f) and to file a report pursuant to Fed. R. Civ. P 26(f)(2) and L.R. 26.1(d) no later than **April 19, 2022**.

DONE this 5th day of April, 2022.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE