FILED

2024 Jan-26  AM 10:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH C. ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  2:21-cv-00439-JHE |
| | ) | |
| CITY OF BESSEMER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER[1]

Through his second amended complaint, Plaintiff Joseph C. Robinson ("Robinson") brings this action under 42 U.S.C. § 1983 and Alabama state law against Defendants City of Bessemer (the "City"), the Estate of Robbie Tackett (the "Estate"),[2] and Charles McKenna ("Officer McKenna").  (Doc. 29).  Defendant Estate of Robbie Tackett has moved to dismiss all claims against it based on Robinson's failure to serve it with the summons and complaint (doc. 48), and Defendants Bessemer and McKenna have moved for summary judgment (doc. 50).  Robinson opposes both motions (docs. 55 & 57), and Defendants have filed replies in support of their motions (docs. 56 & 63).  For the reasons discussed further below, Defendants' motion to dismiss is **GRANTED**, and their motion for summary judgment is **GRANTED IN PART and DENIED IN PART**.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 20).

[2] There is some ambiguity over whether Robbie Tackett or the Estate is actually a party to this action.  Regardless, the undersigned will refer to this Defendant as the Estate.

**I. Standard of Review**

**A. Motion to Dismiss**

**1. Failure to Substitute Under Rule 25(a)**

Federal Rule of Civil Procedure 25(a)(1) provides that "if a party dies and the claim is not extinguished, the court may order substitution of the proper party." If a motion to substitute is "not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." *Id.*

**2. Insufficient Service of Process Under Rule 12(b)(5)[3]**

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104 (1987). Rule 12(b)(5) of the Federal Rule of Civil Procedure permits a defendant to move to dismiss based on insufficient service of process. FED. R. CIV. P. 12(b)(5). The burden is on the plaintiff to establish the defendant was validly served. *Fitzpatrick v. Bank of N.Y. Mellon*, 580 F. App'x 690, 694 (11th Cir. 2014) (per curiam) ("Where a defendant challenges service of process, the plaintiff bears the burden of establishing its validity.") (citing *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981)).[4]

---

[3] The Estate contends Robinson's failure to serve it supports dismissal under both Rule 12(b)(5) and Rule 12(b)(2). (Doc. 48 at 3). While insufficient service of process implicates the court's personal jurisdiction over a defendant, *see Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104 (1987), any jurisdictional issues are derivative of the service issue. Therefore, the undersigned applies the Rule 12(b)(5) standard.

[4] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

**B. Motion for Summary Judgment**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276–78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere

3

'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Summary Judgment Facts[5]

On the evening of October 17, 2018,  Robinson was coming home from classes at Lawson State Community College in Bessemer, Alabama.  (Deposition of Joseph Robinson (doc. 51-4, "Robinson Depo.") at 19–20 (72:5–73:1)).  Robbie Tackett ("Officer Tackett"), an officer with the Bessemer Police Department who was driving behind Robinson, turned on his blue lights and pulled Robinson over.  (Robinson Depo. at 19 (72:5–11).  Robinson pulled over as soon as possible, ultimately stopping near the Beer Garden restaurant.  (Robinson Depo. at 20 (73:6–20)).

The majority of the encounter was captured on Officer Tackett's body camera, although none of the violations allegedly prompting it are visible.  As the video begins, Officer Tackett is still driving.  The video captures Officer Tackett mid-sentence stating, "no signal, he's made multiple traffic offenses."  (Doc. 51-1 ("Tackett Cam.") at 00:01–00:10).[6]  Robinson was not swerving and did not change lanes.  (Robinson Depo. at 33 (127:14–22)).  As Robinson pulled over, Officer Tackett commented, "He's pulling over weird."  (Tackett Cam. at 00:25).

Officer Tackett exited his vehicle and approached Robinson's car.  (Tackett Cam. at 00:27). The motor controlling Robinson's front driver side window did not work, so Robinson rolled down the back driver side window.  (Robinson Depo. at 20 (75:17–20)).  Speaking to Robinson through

---

[5] Based on the foregoing summary judgment standard, the following facts are undisputed or, if disputed, taken in a light most favorable to the non-moving party. Factual disputes are addressed in footnote form.

[6] When citing this and any other video footage, this memorandum opinion cites to the timestamps of the video files.

4

the rolled-down back window, Officer Tackett stated "How you doing, man?" (Tackett Cam. at 00:38). Robinson's response is indistinct, but Officer Tackett responded, "Good." (*Id.* at 00:41). Officer Tackett stated, "Come on, step out the car for me, boss." (*Id.* at 00:42). Robinson asked, "What's going on?" (*Id.* at 00:44). Officer Tackett replied, "Nothing, just step out, you're OK." (*Id.* at 00:45). Robinson's response is again indistinct, but Officer Tackett's tone changed at this point and he asked more forcefully, "Step out of the car." (*Id.* at 00:47). Robinson responded, "Why do I have to step out of the car?" (*Id.* at 00:48).

Robinson testified he refused to step out of the car because he believed he had a right to disobey Officer Tackett's instruction based on his fear for his life. (Robinson Depo. at 23 (85:3–9)). As a result, Officer Tackett continued to insist that Robinson step out of the car and Robinson continued to ask why he had to step out. (Tackett Cam. at 00:48–00:52). Officer Tackett stated, "Sir, I'm not going to ask you again, I'll rip you out. Step out. I'm not playing with you." (Tackett Cam. at 00:52). In response to Robinson's inquiries, Officer Tackett eventually stated, "Step out of the car. You're intoxicated. Something's wrong with you. Step out of the vehicle" (Tackett Cam. at 01:06). Robinson insisted that he was not intoxicated. (*Id.*).

At approximately this point in the traffic stop, Officer McKenna—who had just separately arrived on the scene as a backup officer—activated his body camera. (Doc. 51-2 ("McKenna Cam. 1"); Deposition of Charles McKenna (doc. 51-5, "McKenna Depo.) at 5 (13:6–11, 15:3–5)). Officer Tackett instructed Officer McKenna to "throw this out." (Tackett Cam. at 01:10; McKenna Cam. 1 at 00:03). Officer McKenna went to the back of the vehicle to get its tag number, relaying to dispatch that the officers were on a traffic stop at the Beer Garden and "the subject's being hostile with us." (McKenna Cam. 1 at 00:04–00:16). Officer McKenna then returned to the vehicle's front passenger side.

As he did so, Officer Tackett continued to argue with Robinson.  Officer Tackett stated, "I'm giving you a lawful order.  I'm about to take you to jail." (Tackett Cam. at 01:37).  When Robinson asked why he would be taken to jail, Officer Tackett responded, "obstruction of justice." (Tackett Cam. at 01:42).  Robinson continued to ask why he was being asked to step out of the vehicle. (Tackett Cam. at 01:48).  Officer Tackett responded, "Because you were swerving.  That's why I pulled you over.  You failed to use a signal three different times.  I'm not going to keep explaining this to you.  I have a reason to stop you.  I'm asking you to step out of the car." (Tackett Cam. at 01:50).

At this point, Officer Tackett began attempting to open Robinson's front driver side door. (Tackett Cam. at 02:02).  As Officer Tackett did so, Robinson protested that Officer Tackett was in his car, continued to ask what he had done, and denied that he was drunk.  (*Id.* at 02:02–02:32).  From both sides of the car, the officers instructed Robinson to open the door.  Officer Tackett eventually managed to open the front driver side door at approximately the same time that Officer McKenna opened the front passenger side door. (Tackett Cam. at 02:35; McKenna Cam. 1 at 01:26).

Officer McKenna moved to the driver side as Officer Tackett forcibly removed Robinson from the vehicle, with both officers and Robinson using profanity.[7] (Tackett Cam. at 02:35–02:50; McKenna Cam. 1 at 01:32–01:47).  Robinson testified that Officer Tackett "pulled my left hand, pulled me out.  And all I could remember was him grabbing me -- my neck and just slamming me down to the ground." (Robinson Depo. at 23 (85:18–22)).  The exact details of this portion are not

---

[7] Officer McKenna testified he later received verbal counseling as a reprimand for the language he used during the incident.  (McKenna Depo. at 24 (89:12–90:14)).

clear from either officers' body camera footage; both cameras gyrate wildly for several seconds. (*See* Tackett Cam. at 02:37–02:55; McKenna Cam. 1 at 01:27–01:44).  In any case, in the next clearly visible moment on either officer's body camera, Officer Tackett had taken Robinson to the ground; Robinson was face-down on the pavement, with Officer Tackett straddling his back. (McKenna Cam. 1 at 01:48).  Although Officer Tackett had handcuffs out, Robinson's hands were not yet secured behind his back.  (Tackett Cam. at 02:57; McKenna Cam. 1 at 01:48).

Officer Tackett instructed Officer McKenna to "spray him."  (Tackett Cam. at 02:51).  At this point, Robinson's left arm was on the ground under his head, and his right arm was in front of his head.  (McKenna Cam. 1 at 01:48).  Officer McKenna pulled Robinson's right arm away from his head, but Robinson pulled his arm back.  Both officers then secured Robinson's right arm.  (*Id.* at 01:49–01:51).  When Robinson moved his left arm away from his face, Officer McKenna sprayed Robinson in the face with mace[8] from close range for about four seconds.  (Tackett Cam. at 02:58–03:02; McKenna Cam. 1 at 01:52–01:56).  Officer Tackett instructed, "Stop, stop." (Tackett Cam. at 03:02).  Officer McKenna stopped spraying at this point.  Officer McKenna brought Robinson's left arm behind his back, while Officer Tackett secured Robinson's right arm and handcuffed him.  (Tackett Cam. at 03:07–03:08; McKenna Cam. 1 at 02:05).

After the officers handcuffed Robinson, they moved him to Officer McKenna's patrol car and placed him, sitting, on the car's bumper.  (Tackett Cam. at 03:15–03:47).  Officer McKenna removed a small knife from Robinson's pocket, and Officer Tackett asked, "Is that what you were

---

[8] Bessemer Police Department Procedural General Order 023.00 refers to the irritant used by Officer McKenna as "OC," which it defines  as "Oleoresin Capsicum," which is "a derivative of cayenne pepper . . . classified as an inflammatory."  (Doc. 61-1 at 4).  For consistency with the parties, the undersigned refers to the spray as "mace" and the act of spraying it as "macing."

reaching for?"  (Tackett Cam. at 03:52; McKenna Cam. 1 at 02:48).[9]  Officer Tackett instructed Robinson to "lean his head to the side" and poured water over his face.  (Tackett Cam. at 04:05). After pouring more water over Robinson's face, Officer Tackett instructed Officer McKenna to "transport him."  (*Id.* at 04:28).

At the police station, Robinson ultimately submitted to a Dräger breathalyzer test.  (Doc. 51-3 ("McKenna Cam. 2")).  The test confirmed Robinson had not consumed alcohol.  (McKenna Cam. 2; McKenna Depo. at 13 (48:7–12)).

Both officers provided written statements to their lieutenant.  Neither is entirely consistent with the video.  Officer Tackett's statement indicates that Robinson's vehicle "was Swerving lane to lane, Fail[ed] to signal as well as almost running another motorist off the roadway."  (Doc. 60 at 9).  When Officer Tackett pulled Robinson over, Officer Tackett stated that Robinson "showed several indications of DUI, I believed it was DUI of any substance."  (*Id.*).  Officer Tackett indicated that Robinson was "moving his left hand in his lap moving to the right pocket area," and (inconsistent with the video) that Officer McKenna "stated there was a pocket Knife in his right pocket."  (*Id.*).  Once Officer Tackett opened Robinson's front door, he stated:

> I then removed him from the vehicle and when I did he forced his body weight against me and grabbed my hands.  I then performed a leg sweep to get him on the ground.  I then tried cuffing him from the back side but he was forcing his left hand under the front of his body and Officer Mckenna [sic] could not get his hand from under his body.  Officer Mckenna then sprayed OC spray to the facial area.  I then was able to cuff him.  I then removed him from the contaminated area and washed his eyes out with a gallon of water and placed him in the rear of Mckenna's patrol vehicle.  Robinson then started slamming his head against the dividing glass as well

---

[9] Neither officers' body camera shows which pocket Officer McKenna retrieved the knife from.  Robinson testified that the knife had been in his back pocket.  (Robinson Depo. at 33 (127:23–128:5)).

as rolling on his side and kicking it.  I then had to threaten to spray him again to get
him to quit.

(*Id.*).

Officer McKenna's statement indicates that he was backing up Officer Tackett, who told
him before they approached Robinson's vehicle that "the driver was all over the road and didn't
signal."  (Doc. 60 at 11).  Officer McKenna stated that he "observed a knife in Robinson's right
pants pocket and he kept putting his hand on it."  (*Id.*).  In Officer McKenna's words, once Officer
Tackett was able to open the vehicle's door, Officer Tackett "grabbed Robinson and gently pulled
him out until Robinson pulled back then both officers had to take more of an enforcement action."
(*Id.*).  Officer McKenna indicated that the officers "attempted to place handcuffs on Robinson until
he started resisting," after which Officer McKenna "sprayed a single burst of oc spray in the eyes
of Robinson so that we could subdue him."  (*Id.*).

### III. Procedural History

On October 16, 2020, Robinson filed this action in the Circuit Court of Jefferson County,
Alabama.  (Doc. 1-1).  On March 26, 2021, several defendants named in the original complaint—
the City, Officer Tackett, Officer McKenna, and the Bessemer Police Department ("BPD")—
removed the case to federal court.  (Doc. 1).  Several days later, the City and BPD each filed a
motion to dismiss.  (Docs. 4 & 5).  Defense counsel also filed a motion to dismiss on behalf of
Bessemer Police Chief Michael Roper ("Roper", whom Defendants claimed had not been properly
named in the complaint) and twelve fictitious parties.  (Doc. 6).

On April 21, 2021, Robinson filed an amended complaint, (doc. 11), mooting the motions
to dismiss (*see* doc. 13).  It asserted seven counts: (1) a § 1983 excessive force count against
unspecified defendants (doc. 11 at ¶¶ 19–21); (2) an assault and battery count against Officers

Tackett and McKenna (*id.* at ¶¶ 22–23); (3) an intentional infliction of emotional distress count against unspecified defendants (*id.* at ¶¶ 24–25); (4) a negligence count against the named and fictitious defendants (*id.* at ¶¶ 26–29); (5) a § 1983 failure to train and supervise count against the City, BPD, and Roper (*id.* at ¶¶ 30–33); (6) a § 1983 failure to enact/enforce policy count against the City, BPD, and Roper (*id.* at ¶¶ 34–38); and (7) a § 1983 false arrest, false imprisonment, and unlawful detention count against unspecified defendants (*id.* at ¶¶ 39–41).

All defendants again moved to dismiss the complaint: BPD because it is not a legal entity subject to suit (doc. 14); Roper for failure to state a claim, lack of jurisdiction, and improper service (doc. 15); the City based on the statute of limitations, municipal immunity, and for failure to state a claim as to the § 1983 claims (doc. 16); and Officers McKenna and Tackett (who had died during the pendency of the litigation) for improper service (docs. 18 & 22).  On August 6, 2021, the undersigned entered a memorandum opinion addressing those motions.   (Doc. 27).   The undersigned granted the City's motion as to municipal immunity, dismissing with prejudice the state law claims asserted against it.  (*Id.*).  The undersigned granted BPD's motion in full and denied Officers McKenna's and Tackett's motions as premature.  (*Id.*).  The undersigned also granted Roper's and the City's motions based on Robinson's failure to state § 1983 claims against them, but allowed Robinson an opportunity to file an amended complaint attempting to set out such claims.  (*Id.* at 21).  The order provided that Robinson would have 21 days after filing his amended complaint to serve Officers McKenna and Tackett.  (*Id.*).

On August 20, 2021, Robinson filed his second amended complaint, naming as Defendants the City, Roper, the Estate, and Officer McKenna.  (Doc. 29).  Officer McKenna answered the complaint (doc. 39), but the City and Roper again moved to dismiss (docs. 32 & 37).  The

undersigned granted that motion in part, dismissing most claims against the City and all claims against Roper.  (Doc. 41).  Robinson never served the complaint on the Estate.

## IV. Analysis

As a result of the most recent memorandum opinion (doc. 41), the following claims remain in Robinson's second amended complaint:  (1) Count I, a § 1983 excessive force count against the Estate and Officer McKenna (doc. 29 at ¶¶ 19–21); (2) Count II, an assault and battery count against the Estate, Officer McKenna, and the City (*id.* at ¶¶ 22–23); (3) Count III, an intentional infliction of emotional distress ("IIED") count against the Estate and Officer McKenna (*id.* at ¶¶ 24–25); Count IV, a negligence count against the Estate, Officer McKenna, and the City (*id.* at ¶¶ 26–29); Count VII, a § 1983 false arrest, false imprisonment, and unlawful detention count against the Estate and Officer McKenna (*id.* at ¶¶ 39–41).[10]  The undersigned first discusses the Estate's motion to dismiss, then the other Defendants' motion for summary judgment.

### A. Motion to Dismiss

As discussed above, Robinson has been aware since at least August 6, 2021, that (1) Officer Tackett is deceased and (2) Officer Tackett was never properly served, since the undersigned entered a memorandum opinion stating exactly that.  (Doc. 27 at 18–19).  Nevertheless, Robinson has not moved to substitute the Estate as a party or served the Estate with the summons and

---

[10] It is somewhat unclear whether Robinson intends to assert Counts V (a § 1983 failure to train count) and VI (§ 1983 failure to enact/enforce policy count) of the second amended complaint against the Estate and Officer McKenna.  The allegations in Count V appear to be directed solely at Roper, and the allegations in Count VI appear to refer to conduct by the City and Roper.  (*See* doc. 29 at ¶¶ 30–38).  Both counts have been dismissed as to these defendants.  (*See* doc. 41 at 19).

However, the concluding lines of each count state that Robinson is entitled to an award of damages "against Defendants Tackett, McKenna, and Roper."  (Doc. 29 at ¶¶ 33, 38).

complaint.  The Estate contends both failure to substitute and failure to serve support dismissal. The undersigned discusses each basis below.

**1. Dismissal Under Rule 25(a)**

Officer Tackett originally moved to dismiss Robinson's claims against him for improper service.  (Doc. 18).  Officer Tackett's motion is titled "DEFENDANT TACKETT'S SUGGESTION OF DEATH AND MOTION TO DISMISS AMENDED COMPLAINT."  (*Id.* at 1).  The opening paragraph states that Officer Tackett is "filing a suggestion of his untimely passing . . . ."  (*Id.*).  Attached to the motion, Officer Tackett provided an obituary noting his death on March 28, 2021.  (Doc. 18-1).  In the memorandum opinion on this motion to dismiss, the undersigned characterized the obituary and motion as "a 'statement noting death' under Fed. R. Civ. P. 25(a)(3)."  (Doc. 27 at 18, n.14).  Despite this, Robinson has never moved to substitute the Estate as a party under Rule 25(a).

Robinson accuses Defendants of arguing for the Estate's dismissal "on technical grounds." (Doc. 55 at 1).  The remainder of Robinson's response is itself a technical argument that the wrong party filed a suggestion of death.  In Robinson's view, only the personal representative of the Estate can file a suggestion of death.  (*Id.* at 1–3).  The only authority Robinson cites for this proposition is *Prassenos v. E.I. DuPont de Nemours & Co.*, Case No. 13–00419-KD-C (S.D. Ala. Mar. 17, 2014), which Robinson contends holds that "a suggestion of death must be filed by the decedent's successor or personal representative, i.e. by the party themselves, and not by the attorney representing the decedent up until their death . . . " (Doc. 55 at 2).  The cited document appears to be a report and recommendation later adopted by the district court in *Prassenos v. E.I. DuPont De Nemours & Co.*, 2014 WL 1331014, at *1 (S.D. Ala. Apr. 2, 2014).  Nowhere in that report and recommendation is there a discussion of the proper party to *file* a suggestion of death.  This makes

sense because the suggestion of death in that case was actually filed in that case on December 29, 2014—more than eight months after the decision Robinson cites. *Prassenos*, Case No. 13–00419-KD-C at doc. 60. And, directly contrary to Robinson's representations, the attorney for the decedent plaintiff is the one who filed the suggestion of death. *Id.* The *Prassenos* court does not appear to have found anything improper about this, because it granted the motion to substitute accompanying the suggestion of death. *Id.* at doc. 65. The undersigned has not located anything—in the entirety of the *Prassenos* case or elsewhere—that would support Robinson's legal theory.

In any case, Robinson's argument is incorrect. The Eleventh Circuit recently confronted this exact situation in *Silas v. Sheriff of Broward County, Fla.*, 55 F.4th 872 (11th Cir. 2022). In *Silas*, a plaintiff sued a sheriff and an officer. *Id.* at 874. The officer died during the litigation. *Id.* The sheriff filed a suggestion of death and served the plaintiff's counsel. *Id.* Although the plaintiff stated she would open an estate for the officer, she never actually did so. *Id.* at 874–75. The district court dismissed the plaintiff's claims against the officer for failure to substitute a proper party, and the Eleventh Circuit affirmed. *Id.* Here, just as in *Silas*, it is irrelevant that the party who filed the suggestion of death was not a representative of the decedent's estate.

The more pressing issue here is that, as brought to the undersigned's attention for the first time in Robinson's response that an estate for Officer Tackett *has never even been opened*, and therefore the Estate does not legally exist as a party to be substituted. Robinson argues that Defendants failed to open an estate "as a tactical maneuver . . . to engineer a situation where it would be virtually impossible for another party to meaningfully substitute a defendant and seek redress for Tackett's actions," (*id.* at 2–3), but Robinson fails to explain why any of the Defendants have an obligation to open an estate to assist his litigation. Robinson also does not explain why it would be "virtually impossible" for *him* to open an estate for Officer Tackett just because no estate

13

had previously been opened.  "Under Alabama law, where the decedent's survivors do not apply to administer the estate and forty days pass, they relinquish their right . . . . After that period, [Robinson] was permitted to apply for letters of administration."  *Silas*, 55 F.4th at 877 (citing ALA. CODE § 43-2-43(b)).  Robinson did not do so, so he cannot now complain that there is no open estate to serve.

Robinson requests the opportunity to "add the estate representative once the estate is opened."  (Doc. 55 at 3).  Because this request comes well after the Rule 25(a)(1) deadline, the undersigned construes this as a motion for an extension of time pursuant to Rule 6(b)(1)(B).  "[A]fter the Rule 25 period expired, the District Court retain[s] the discretion to extend time if [the plaintiff] show[s] 'excusable neglect.'"  *Lizarazo v. Miami-Dade Corr. & Rehab. Dep't*, 878 F.3d 1008, 1011–12 (11th Cir. 2017) (quoting FED. R. CIV. P. 6(b)(1)(B)).  "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect.'"  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993).  "So, failure to abide by a clear legal deadline constitutes inexcusable neglect."  *Silas*, 55 F.4th at 877.  Robinson offers no rationale to support that a two-year delay in substituting a party is excusable, particularly where the record contains no hint that Robinson made any effort during those two years to do so—nor did he even bring to the court's attention that there was no estate at all to substitute.   Therefore, that motion is **DENIED**, and the Estate's motion to dismiss is **GRANTED**.[11]

---

[11] In its motion to dismiss, the Estate does not specify whether it seeks dismissal with or without prejudice. (*See generally* doc. 48).  However, in this circuit, district courts do not consider dismissal under Rule 25(a) to be an adjudication on the merits.  *See McGrew v. BP Expl. & Prod., Inc.*, 2021 WL 2013050, at *5 (S.D. Ala. May 20, 2021) (collecting cases).  Therefore, dismissal without prejudice is appropriate.

**2. Dismissal Under Rule 12(b)(5)**

Although Robinson failed to substitute the proper party under Rule 25(a), the undersigned notes that the court never explicitly ordered substitution. Robinson does not argue this excuses his failure to meet the Rule 25(a) deadline, nor could he. *Silas*, 55 F.4th at 877 (noting the plaintiff "should have been aware of the 90-day deadline for a motion to substitute" even without the district court "jogging" the plaintiff's "memory" by issuing orders reminding her of the deadline). Even assuming, though, that Robinson reasonably believed that either (1) the court's failure to order substitution meant that substitution was not required or (2) the memorandum opinion implicitly granted Robinson permission to substitute the Estate which Robinson then did by filing the second amended complaint naming the Estate as a party,[12] Robinson's claims against the Estate are still due to be dismissed on the alternative ground that Robinson failed to timely serve the Estate.

Under Federal Rule of Civil Procedure 4(c)(1), "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) . . . ." Rule 4(m) provides a 90-day time period for service, after which the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m). If a plaintiff shows good cause for his failure to serve a defendant, "the court must extend the time for service for an appropriate period." *Id.*

---

[12] To the extent that the Estate was substituted for Tackett pursuant to Rule 25(a) under this theory, its election as to magistrate judge jurisdiction is the same as Tackett's. *See Brook, Weiner, Sered, Kreger & Weinberg v. Coreq, Inc.*, 53 F.3d 851 (7th Cir. 1995) (holding that successor parties share the consent election of the original party because their "status in the litigation—like the substantive claims they raise or defend—tracks the positions of the original litigants."). In other words, although the Estate is nominally a different party, its status as a party in this case would not implicate consent under 28 U.S.C. § 636(c).

15

As discussed in the memorandum opinion, Robinson originally (but improperly) attempted to serve Officer Tackett at the Calera Police Department on February 22, 2021, prior to this case's removal from state court.  (Doc. 27 at 5, 19–20).  In any case, the 90-day service deadline under Rule 4(m) began to run once the case was removed to federal court on March 26, 2021.  (Doc. 27 at 8).  In other words, unless extended, Robinson originally had until June 14, 2021, to serve Officer Tackett.  Owing in part to its entry after Robinson's original deadline expired, the undersigned's August 6, 2021 memorandum opinion extended that deadline as to any unserved or improperly served defendant.  (*Id.* at 21).  The memorandum opinion *explicitly* stated that Robinson "will have 21 days [from August 20, 2021] to serve the unserved or improperly served defendants" (*id.* at 21), effectively extending the Rule 4(m) deadline until September 13, 2021.

The record contains no evidence that Robinson has ever served, or even attempted to serve, the Estate by that deadline or at any point afterwards.  Robinson did not ask for additional time prior to the deadline's expiration or indicate in any way to the court that there was an impediment to service.  As noted above, Robinson now states that no estate for Officer Tackett has ever been opened; Robinson did not bring that to the court's attention until responding to the Estate's motion to dismiss.  Beyond obtaining a summons (doc. 30 at 3),[13] Robinson has taken no steps at all in the more than two years that followed the deadline provided in the memorandum opinion to serve the

---

[13] As the Estate points out, the address Robinson provided for the Estate's summons—1800 3rd Avenue North, Bessemer, AL 35020—is the same address he provided for the City.  (Doc. 48 at 3) (citing doc. 30).  It is unclear why Robinson believed the Estate could be served at this address.

Estate. Accordingly, even if the Estate had been properly substituted under Rule 25(a), Robinson's claims against it are due to be dismissed under for lack of service.[14]

To the extent that Robinson's response can be construed as a motion for additional time to serve the Estate pursuant to Rule 6(b)(1)(B), the undersigned finds Robinson's failure to take any proactive steps to serve the Estate is not excusable neglect. *See Silas*, 55 F.4th at 877. Therefore, that motion is **DENIED**.

### B. Motion for Summary Judgment[15]

**1. Section 1983 Claims**

Defendants assert Officer McKenna did not violate Robinson's constitutional rights, and that in any case Officer McKenna is entitled to qualified immunity on both of Robinson's § 1983 claims. (Doc. 52 at 12–17).

"Qualified immunity protects government officials who were sued individually 'unless the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances.'" *Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013) (citation omitted).

---

[14] If Robinson's claims were dismissed for lack of service under either Rule 12(b)(5) or Rule 4(m), that dismissal would also be without prejudice. *See Abram v. Fulton Cnty. Gov't*, 482 F. App'x 421, 424 (11th Cir. 2012) ("Dismissal under . . . Rule 12(b)(5) does not constitute a judgment on the merits."); *Jackson v. Warden, FCC Coleman-USP*, 259 F. App'x 181, 183 (11th Cir. 2007) (citing *Pardazi v. Cullman Med. Center*, 896 F.2d 1313, 1317 (11th Cir.1990) ("Because [the plaintiff] failed to serve defendants properly . . . this case should have been dismissed without prejudice."). FED. R. CIV. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant . . . .").

[15] For the remainder of this memorandum opinion, the undersigned will refer to the City and Officer McKenna collectively as "Defendants."

To receive the protection of qualified immunity, the government official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004). Once an official establishes he is acting within his discretionary authority, the burden shifts to the plaintiff to demonstrate qualified immunity is inappropriate. *White v. City of Birmingham*, 96 F. Supp. 3d 1260, 1285 (N.D. Ala. 2015).

To determine whether qualified immunity is appropriate, the court asks two questions: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" (2) "If a violation could be made out on a favorable view of the parties' submissions, . . . [was] the right . . . clearly established?" *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). This two-part analysis may be performed in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A right may be clearly established in one of three ways: (1) "case law with indistinguishable facts clearly establishing the constitutional right"; (2) "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right"; or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Baxter v. Roberts*, 54 F.4th 1241, 1263 (11th Cir. Nov. 30, 2022) (quoting *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009)). "In this circuit, rights are 'clearly established' by decisions of the Supreme Court, this court, or the highest court of the state in which the case arose." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003).

Each claim is discussed below, along with any qualified immunity issues applicable to it.

### a.   Count I – Excessive Force (Officer McKenna)

As an initial matter, the undersigned must define the scope of Robinson's excessive force claim.  Robinson's complaint is not clear on this point, nor is his response to the motion for summary judgment.  That said, Robinson appears to advance two distinct rationales for this claim: (1) that the force used was excessive because the stop itself was conducted without reasonable suspicion, and thus *any* force was impermissible (*see, e.g.,* doc. 57 at 12 ("Robinson avers the Defendants stopped him illegally.")); and (2) that the use of force was itself excessive (*see, e.g.,* doc. 57 at 12–14 (discussing Officer McKenna's use of mace); doc. 29 at ¶¶ 9–10 (contending Robinson was "not resisting the police officers," yet was subjected to a "violent and brutal assault" culminating in Officer McKenna "spraying mace in the face of the Plaintiff . . . ." ); (Robinson Depo. at 33 (126:5–10) (testifying that Robinson injured him because "He maced me. He sprayed me. He pulled my hands out the way and maced me.")).

As to the first possibility, the Supreme Court has held that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor,* 490 U.S. 386, 396 (1989).  A corollary to that is that an officer's physical coercion is justified only when he had the right to make the arrest or stop in the first instance.  *See Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006). It does not necessarily follow from that fact that the only point of analysis in an excessive force claim is whether the officer was justified at the outset to detain the plaintiff.  Only when a plaintiff's "excessive force claim is predicated *solely* on allegations the arresting officer lacked the power to make an arrest" does the excessive force claim become "entirely derivative of, and . . . subsumed within, the unlawful arrest claim." *Id*. (emphasis added).  "When properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner

19

in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest." *Id.*

Applying this authority to the facts of this case, to the extent Robinson premises his excessive force claim on his contention that any force was excessive because the stop was illegal, it is subsumed within the claim in Count VII.[16]  *Bashir*, 445 F.3d at 1332.  The only standalone excessive force claim Robinson could have against Officer McKenna is the second theory above. In other words, regardless of the legality of what brought Officer McKenna to the point where Robinson contends Officer McKenna used excessive force, Robinson's excessive force claim against Officer McKenna rises and falls on whether the amount of force Officer McKenna used to subdue him was excessive.

Turning to that argument, as stated above, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham,* 490 U.S. at 396.  "In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's 'objective reasonableness' standard."  *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (quoting *Graham,* 490 U.S. at 396).  Under *Graham*, a court assessing the objective reasonableness of an officer's use of force looks to a number of factors, including "[1] the relationship between the need for the use of force and the

---

[16] The practical effect of this is minimal, since "the damages recoverable on an unlawful arrest claim include damages suffered because of the use of force in effecting the arrest." *Bashir*, 445 F.3d at 1332 (cleaned up).

amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." *Patel*, 969 F.3d at 1182 (citing *Kingsley*, 576 U.S. at 397, in turn citing *Graham*, 490 U.S. at 396). This list is nonexclusive. *Id.*

Here, the first, fourth, and sixth factors blend together. As for Officer McKenna's justification for the use of force, he sprayed Robinson with mace because, having been extracted from the car, Robinson was not subdued to the point where Officer Tackett could handcuff him—in Officer McKenna's words, "[t]o when he cooperates where we're able to place him in custody" (McKenna Depo. at 18 (67:6–14)). "Courts have consistently concluded that using pepper spray is reasonable . . . where the plaintiff was either resisting arrest or refusing police requests . . . ." *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002). At a minimum, even though Robinson was not suspected of a serious crime, Robinson was refusing Officer Tackett's request. The use of mace was also consistent with the security problem at issue, which was to secure Robinson in handcuffs. And the video supports that Robinson was resisting the officers' efforts to secure him. Robinson emphasizes that he was "already on the ground" and "face down" when Officer McKenna handcuffed him, that Officer McKenna was able to manipulate his arm to spray mace in his face and thus "could have easily handed Robinson's hand to Officer Tackett for cuffing." (Doc. 57 at 13). This is not an accurate reflection of the video footage.[17] While Robinson was indeed

---

[17] Since the Supreme Court decided *Scott v. Harris*, 550 U.S. 372 (2007), the Eleventh Circuit has consistently held that where there is uncontroverted video evidence that blatantly contradicts the plaintiff's account, the court is not required to adopt the plaintiff's version of the events for purposes of summary judgment. *See, e.g., Pourmoghani-Esfahani v. Gee*, 625 F.3d

on the ground, Officer McKenna's body camera video clearly shows Robinson's left arm under his head and Robinson's right arm in front of his head before Officer McKenna sprayed Robinson. (McKenna Cam. 1 at 01:48).   Contrary to Robinson's account, when Officer McKenna pulled Robinson's right arm away from his head, Robinson pulled his arm back, after which *both* officers pulled Robinson's right arm back.   (*Id.* at 01:49–01:51).   Robinson then moved his own left arm forward, exposing his face.   (*Id.* at 01:52).   At that point, Officer McKenna sprayed Robinson. These three factors weigh in favor of the reasonableness of Officer McKenna's use of force.

The second and third factors are also interrelated here, and both also weigh in Officer McKenna's favor.   The second factor examines the extent of the plaintiff's injury.   Mace is painful, but its effects are temporary.   Robinson does not allege he suffered any lasting physical injury from Officer McKenna's use of mace, and in fact confirmed that the irritation caused by the spray healed.   (Robinson Depo. at 25 (94:2–5)).   The third factor looks to efforts made by the officer to limit the use of force.   On the continuum of types of force an officer could use to gain compliance, mace is fairly low because it is temporary and does not generally cause permanent physical injuries.   *See Vinyard*, 311 F.3d at 1348 ("[A]s a means of imposing force, pepper spray is generally of limited intrusiveness, and it is designed to disable a suspect without causing permanent physical injury.") (cleaned up).   Robinson argues that Officer McKenna maced him for an excessive period of time, but the video does not support this.   As set out above, Officer

---

1313, 1315 (11th Cir. 2010); *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013); *Mathis v. Adams*, 577 Fed. Appx. 966, 968 (11th Cir. 2014).   Here, the only version of events that even potentially contradicts the video evidence is from Robinson's counsel's arguments, which are not evidence.   *See United States v. Smith,* 918 F.2d 1551, 1562 (11th Cir. 1990) ("[S]tatements and arguments of counsel are not evidence.").   Robinson did not testify, for example, that he was not resisting the officers' efforts to handcuff him.

McKenna maced Robinson for approximately four seconds.  The video does not reflect that Robinson had complied or been subdued within those four seconds, and there is no apparent reason why four seconds would be an objectively unreasonable amount of time to apply mace.  *See Nigro v. Carrasquillo*, 663 F. App'x 894, 897 (11th Cir. 2016) (holding "a couple of two-second bursts of pepper spray" to be reasonable to subdue a suspect who was inside a patrol car but "violently kicking the patrol car door and resisting arrest.").

Finally, the fifth factor considers the threat posed by Robinson.  There is no evidence that Robinson was acting violently, that Officer McKenna considered him to be particularly threatening, or that others would have been harmed if Officer McKenna failed to use force.  This factor thus weighs weakly against the reasonableness of Officer McKenna's use of force.

Considering the totality of the *Graham* factors, only one weighs against the conclusion that the use of force was reasonable under the circumstances.  The remaining factors support the reasonableness of Officer McKenna's use of mace.  The undersigned concludes that the force Officer McKenna used was "reasonably proportionate to the need for that force," *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002), and thus that Officer McKenna did not violate Robinson's Fourth Amendment rights by using mace.

In the alternative, even if Officer McKenna's use of mace violated Robinson's Fourth Amendment right to be free from excessive force, Officer McKenna is entitled to qualified immunity as to that claim.[18]  Specifically, Robinson has not met his burden to point to clearly

---

[18] There does not appear to be any dispute—and, in any case, it does not appear debatable—that Officer McKenna, an on-duty officer responding to a traffic stop, was acting within his discretionary authority during the events in question here.  *See Jordan v. Doe*, 38 F.3d 1559, 1566

established law supporting that Officer McKenna's conduct violated his rights.  The closest Robinson comes to this is disputing that *Vinyard, supra,* supports the use of mace.  The *Vinyard* court observed that "[c]ourts have consistently concluded that using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else."  *Vinyard*, 311 F.3d at 1348. But several of those factors are not present here; Robinson had not surrendered and was not secured when Officer McKenna maced him, regardless of whether he was suspected of a minor infraction or was a threat to others.  Robinson also cites the Bessemer Police Department's policies concerning the use of mace, but a departmental policy cannot clearly establish a right.  *See Thomas*, 323 F.3d at 953.  Since Robinson has not shown that clearly established law supports a constitutional violation under the facts of this case, he cannot overcome qualified immunity.

### b.  Count VII – False Arrest/False Imprisonment/Unlawful Detention (Officer McKenna)

As with Count I, it is unclear from Robinson's second amended complaint what precisely Robinson contends was at issue in Count VII.  The second amended complaint references "depriving the Plaintiff of his liberty without due process of law, by taking him into custody and holding him there against his will" (doc. 29 at ¶ 41.1), "making an unreasonable search and seizure of his property without due process of law" (*id.* at ¶ 41.2), "conspiring for the purpose of impeding and hindering the due course of justice" (*id.* at ¶ 41.3), and "refusing or neglecting to prevent such depredations and denials to the Plaintiff" (*id.* at ¶ 41.4).  None of these paragraphs cites any

---

(11th Cir. 1994) (officers act within his discretionary authority when they are "acting pursuant to their job functions and within the scope of their authority").

specific event in the encounter.  Robinson's response to the motion for summary judgment primarily disputes that the initial stop was justified (doc. 57 at 9–12), but also contends he was unlawfully arrested once he was pulled from the vehicle (*id.* at 16–21).  The undersigned discusses both possibilities below as they pertain to Officer McKenna.

### i. Initial Traffic Stop

An investigative stop predicated on an observed traffic violation is a seizure under the Fourth Amendment.  *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).  To comply with the Fourth Amendment, an officer's traffic stop must be predicated on reasonable suspicion: "a particularized and objective basis for suspecting the person stopped of criminal activity."  *United States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022) (citing *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)); *Navarette v. California*, 572 U.S. 393, 396 (2014)).  Reasonable suspicion is determined from "the totality of the circumstances—the whole picture."  *Navarette*, 572 U.S. at 397 (cleaned up).  In considering whether the totality of the circumstances supports reasonable suspicion, officers use "commonsense judgments and inferences about human behavior."  *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).  They may also "draw on their own experience and specialized training to make inferences from and deductions about" the information they have accumulated.  *United States v. Arvizu*, 534 U.S. 266, 273 (2002).  "Even minor traffic violations qualify as criminal activity."  *Campbell*, 26 F.4th at 880.

There is a factual dispute here as to whether Robinson was lawfully detained in the first place by Officer Tackett.  On the one hand, both officers' written reports and Officer Tackett's statements at the beginning of his body camera footage indicate that Robinson had improperly changed lanes and had been driving in a manner consistent with intoxication.  On the other hand, Robinson denied swerving or changing lanes (Robinson Depo. at 33 (127:14–22)), and none of the

actual movements of Robinson's vehicle were captured on camera. In other words, "[w]hether . . . reasonable suspicion existed for [the traffic] stop depends on whose version of events a jury believes." *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000).

That said, Robinson's detention pursuant to the traffic stop would be relevant only to support Officer Tackett's liability, if the Estate were still a viable defendant. "To establish § 1983 liability, a plaintiff must show proof of an affirmative causal connection between a government actor's acts or omissions and the alleged constitutional violation, which may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation. Merely being present with the arresting officers at the scene is not enough, unless the plaintiff can show that the defendant officer was part of the chain of command authorizing the arrest action." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010) (cleaned up). There is no evidence of any causal connection between the stop itself and Officer McKenna. Defendants affirmatively deny any such connection (doc. 52 at 13), and Robinson does not provide any argument supporting Officer McKenna's liability. Accordingly, Officer McKenna cannot be held liable for any constitutional defect in the initial traffic stop. To the extent Robinson's Count VII claims against Officer McKenna are predicated on such a defect, Officer McKenna is entitled to summary judgment.

### ii. Arrest

The next portion of the encounter which Robinson contends constituted unlawful detention is his arrest itself.[19] Defendants contend Officer McKenna "did not arrest Plaintiff Robinson, and

---

[19] It is unclear for what offense Robinson was actually arrested. Robinson contends that he "has a criminal case pending in the Bessemer Municipal Court, Case Numbers MC 18-3767

did not charge Plaintiff Robinson with the violation of any law . . . ." (Doc. 52 at 13–14). This is only partially accurate. While Defendants are correct that Officer McKenna did not initiate the traffic stop and did not charge Robinson, Officer McKenna did at least assist with Robinson's arrest. Nevertheless, to the extent Officer McKenna could be held liable for his participation in Robinson's arrest, he is entitled to qualified immunity.

"For Fourth Amendment purposes, arrests are seizures and are unreasonable unless supported by probable cause." *Edger v. McCabe*, 84 F.4th 1230, 1235 (11th Cir. Oct. 20, 2023) (citation omitted). Probable cause for an arrest exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Rankin v. Evans,* 133 F.3d 1425, 1435 (11th Cir. 1998). In the qualified immunity context, an officer need only have "arguable probable cause" to make the arrest. *Edger*, 2023 WL 6937465, at *3. Arguable probable cause exists where "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *Garcia v. Casey*, 75 F.4th 1176, 1184 (11th Cir. 2023) (quoting *D.C. v. Wesby*, 583 U.S. 48, 68 (2018)).

---

and TR 18-5718–5720," which have not been adjudicated as of the date of his response to the motion for summary judgment. (Doc. 57 at 9). There is no evidence in the record concerning these charges, and an AlaCourt search for the case numbers Robinson has supplied (Bessemer County Municipal Criminal Case No. 18-3767; Bessemer County Traffic Case Nos. 18-5718, 18-5719, and 18-5720) returns no results. An AlaCourt search for cases involving Joseph Robinson in the Bessemer Division of Jefferson County returns only one result in the twenty-first century: this case prior to its removal to federal court.

Defendants argue Officer McKenna had at least arguable probable cause to arrest Robinson based on a violation of Alabama's obstruction of governmental operations statute, Alabama Code § 13A-10-2.  (Doc. 52 at 13–15).  The relevant portion of that statute provides:

> (a) A person commits the crime of obstructing governmental operations if, by means of intimidation, physical force or interference or by any other independently unlawful act, he:
>
>> (1) Intentionally obstructs, impairs or hinders the administration of law or other governmental function; or
>>
>> (2) Intentionally prevents a public servant from performing a governmental function.

ALA. CODE § 13A-10–2(a).  Defendants contend Robinson's actions in refusing to step out of the car so the officers could perform a field sobriety test "interfered with Officer Tackett's ability to assess his ability to operate his car due to being impaired."  (Doc. 52 at 14–15).

Officer McKenna had at least arguable probable cause to arrest Robinson based on the facts that he observed.  The "the facts and circumstances within [Officer McKenna's] knowledge" included that Officer Tackett had pulled Robinson over.  There is no evidence that Officer McKenna had any reason to believe Officer Tackett had improperly stopped Robinson.[20]  Officer McKenna then observed Robinson refusing to exit the vehicle after receiving an apparently lawful order to do so.[21]  *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) ("once a motor vehicle

---

[20] Officer McKenna also had no duty to investigate why Officer Tackett pulled Robinson over.  *See Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013).

[21] Robinson contends he "never 'refused' to get out of the car" and only asked what he had done and why he needed to get out of the car (doc. 57 at 13–14), but this is a nonstarter given the video evidence.   To the extent Robinson contends that he simply wanted to know why he was being detained, Robinson knew each of Officer Tackett's justifications less than two minutes into the encounter.  Officer Tackett informed Robinson that he suspected Robinson of being intoxicated

has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable seizures."). This appears to facially satisfy the requirements of § 13A-10-2(a) that, from the perspective of a reasonable officer in Officer McKenna's position, Robinson physically obstructed Officer Tackett's ability to investigate by refusing to exit the vehicle.[22]  Therefore, Officer McKenna had arguable probable cause to arrest Robinson.[23]

Robinson offers three arguments that § 13A-10-2 does not apply.  First, he points to § 13A-10-2(b), which states: "This section does not apply to the obstruction, impairment or hindrance of the making of an arrest."  (Doc. 57 at 17) (quoting ALA. CODE § 13A-10-2(b)). Robinson correctly cites the statutory language, but he is mistaken about its implications. Robinson did not obstruct his own arrest; from Officer McKenna's perspective, Robinson obstructed Officer Tackett's investigation into events giving rise to the traffic stop.  Second, Robinson also  commented on the statute indicating that "this section would not apply to illegal

---

[22] at 01:06 and of swerving and failing to signal at 01:50.  Instead of getting out of the car, Robinson continued to inquire about why he was required to step out of the car for the next forty seconds.

[22] As the Alabama Court of Criminal Appeals has interpreted the provision, to satisfy § 13A-10-2 "require[s] that the interference be *physical* interference and that words alone fail to provide culpability . . . ."  *D.A.D.O. v. State*, 57 So. 3d 798, 806 (Ala. Crim. App. 2009) (emphasis in original).  Here, Officer McKenna observed more than words alone; Robinson's words were accompanied by his refusal to obey Officer Tackett's apparently lawful order to exit the vehicle, which is at least arguably physical interference.  In any case, Robinson does not dispute the provision's application on the basis that he did not physically interfere with governmental operations.

[23] Robinson possibly also contends he was unlawfully searched once he was placed in handcuffs: in other words, after he had been arrested.  (Doc. 57 at 16).  Once a person has been arrested, an officer may permissibly search "the arrestee's person and the area within his immediate control . . . ."  *Chimel v. California*, 395 U.S. 752, 763 (1969).  Because Officer McKenna had arguable probable cause to arrest Robinson, he was also entitled to perform a search incident to arrest.

action by a public servant in performing an unauthorized function." (Doc. 57 at 17) (citing § 13A-10-2 Commentary). Robinson contends "he did nothing wrong and that the stop was pretextual." (*Id.*). While either or both of these things may be true of the stop itself, they are not relevant to whether Officer McKenna violated Robinson's Fourth Amendment rights because Officer McKenna had no basis to question the probable cause for the stop.[24] Finally, Robinson states that he "lacked intent to obstruct any type of government function and merely wanted to know the basis for his stop" and that his "intent to obstruct is a question for the jury." (*Id.* at 18). Robinson is incorrect that his intent is at issue, because "[s]howing arguable probable cause does not . . . require proving every element of a crime." *Brown*, 608 F.3d at 735 (citation omitted). Robinson's intent to violate the statute is irrelevant to the question of whether a reasonable officer in Officer McKenna's position "could have interpreted [§ 13A-10-2] as permitting [Robinson's] arrest[]." *Garcia*, 75 F.4th at 1184.

Furthermore, Robinson has not met his burden to contest qualified immunity by pointing to clearly established law supporting the Fourth Amendment violation he claims. The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 583 U.S. at 63–64 (cleaned up). To the extent that Robinson points to controlling law at all, it is at an extremely high level of generality. The only citations to any law in Robinson's brief that could even arguably apply here are: (1) a

---

[24] Although it is irrelevant for Officer McKenna's liability, the Supreme Court has rejected Robinson's apparent contention that a pretextual stop is impermissible. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). In other words, as long as an officer has reasonable suspicion justifying the stop, the officer's true motives are immaterial.

citation to *Green v. State*, 238 Ala. 143 (1939), for the general proposition that "the citizen may resist an attempt to arrest him which is simply illegal, to a limited extent, not involving any serious injury to the officer . . . ." (doc. 57 at 10–11); and (2) a citation to an unpublished district court case setting out the qualified immunity standard (doc. 57 at 19) (citing *Walker v. Dorriety*, 2023 U.S. Dist. LEXIS 15261, *13) (in turn citing *Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 (11th Cir. 2003)).  The second of these is just the standard the court is applying, and the first is a broad statement that does not speak to the specific facts here (which, again, consist of what was available to a reasonable officer in Officer McKenna's position).  Robinson points to no controlling law supporting that an officer arriving on the scene of a traffic stop begun by another officer must himself have probable cause to support the stop or independently inquire into it, or else be held liable for the stop itself.  He also points to no controlling law supporting that the second officer on the scene must have probable cause to support the stop if, when arriving on the scene, the second officer witnesses a driver refusing to obey the first officer's instructions to exit the vehicle and assists with an arrest on that basis.  Absent anything approaching either, Officer McKenna is entitled to qualified immunity for his participation in Robinson's arrest.

### 2. State Law Claims (Officer McKenna and the City)

As discussed above, Robinson's second amended complaint contains three state law causes of action: assault and battery (Count II), IIED (Count III), and negligence (Count IV).  (Doc. 29 at ¶¶ 22–29).  Counts II and IV are asserted against Officer McKenna and the City, while Count III is asserted against Officer McKenna alone.  (*See id.*).

The second amended complaint is not a model of clarity as to what conduct is at issue in each count.  While each of these torts is analytically distinct, the undersigned concludes they all stem from the use of force rather than any other portion of the encounter.  Supporting this

interpretation, Robinson contends Defendants' motion should be denied as to all three of the state law claims because "[t]he Defendants used more force than necessary to gain Robinson's compliance, and the reasonableness of such force used against Robinson is a question for the jury." (Doc. 57 at 22).  The undersigned discusses each cause of action separately below as it pertains to Officer McKenna, then the application of state immunity doctrines, then the City's liability.

### a.   Count II – Assault and Battery (Officer McKenna)

> "The plaintiff in an action alleging assault and battery must prove '(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner.'" *Harper v. Winston County,* 892 So. 2d 346, 353 (Ala. 2004) (quoting *Ex parte Atmore Cmty. Hosp.,* 719 So. 2d 1190, 1193 (Ala. 1998)). However, this Court has stated: "In making the arrest, a police officer may use reasonable force and may be held liable only if more force is used than is necessary to effectuate the arrest." *Franklin v. City of Huntsville,* 670 So. 2d 848, 852 (Ala. 1995), citing § 13A-3-27(a), Ala. Code 1975 ("A peace officer is justified in using that degree of physical force which he reasonably believes to be necessary, upon a person in order: (1) To make an arrest for a misdemeanor, violation or violation of a criminal ordinance . . . unless the peace officer knows that the arrest is unauthorized.").

*Walker v. City of Huntsville*, 62 So. 3d 474, 494 (Ala. 2010).

Defendants argue that a ruling in their favor on the § 1983 excessive force claim necessarily means that they are entitled to a ruling in their favor on the assault and battery claim.  (Doc. 52 at 22).  They base this on *Walker*, in which the Alabama Supreme Court held that a federal district court's determination that a defendant police officer's use of force was not excessive foreclosed a state law assault and battery claim.  62 So. 3d at 494.  The Alabama Supreme Court based this on the doctrine of collateral estoppel, which bars claims where a party can establish: "(1) that an issue in a prior action was identical to the issue litigated in the present action; (2) that the issue was actually litigated in the prior action; (3) that resolution of the issue was necessary to the prior judgment; and (4) that the same parties are involved in the two actions."  *Id.* at 487 (cleaned up).

In the assault and battery context, the Alabama Supreme Court found that each of those elements was present.  *Id.* at 494.  Specifically, the court observed that "[t]he federal court based its determination on federal precedent that allows the use of reasonable or *de minimus* force during an arrest," which was "identical to the issue raised by [the plaintiff's] assault and battery claim." *Id*.

Robinson contends *Walker* does not bar his claim here because the rest of the elements of collateral estoppel are not met.  (Doc. 57 at 22–23).  This misunderstands *Walker's* application to this case.  The issue is not whether the doctrine of collateral estoppel bars his claim; it is whether the resolution of the § 1983 excessive force claim dictates the resolution of the state law claim when both (1) are based on the same facts and (2) depend on the reasonableness of the force used. As discussed above, the undersigned has determined that Officer McKenna used reasonable force during the encounter.  Based on that determination, *Walker* dictates that Robinson may not pursue an assault and battery claim on the same facts.

### b.  Count III – IIED (Officer McKenna)

The Alabama Supreme Court first recognized the tort of outrage, or IIED, in *American Road Service Co. v. Inmon*, 394 So. 2d 361 (Ala. 1981). To establish an IIED claim, a plaintiff must show that:

> (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) the distress was severe. *Harris v. McDavid*, 553 So. 2d 567 (Ala. 1989). The conduct alleged must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* at 570; citing *American Road Service Co. v. Inmon*, 394 So.2d 361, 365 (Ala. 1980).

*Shepherd v. Summit Mgmt. Co.*, 726 So. 2d 686, 694 (Ala. Civ. App. 1998).

>The determination as to whether "evidence is sufficiently extreme or outrageous to support a cause of action for outrageous conduct is for the trial court to make as a matter of law." *Carter v. Harris*, 64 F. Supp. 2d 1182, 1194 (M.D. Ala. 1999) (granting summary judgment on outrage claim). In analyzing whether conduct is sufficiently extreme and outrageous to support a claim of outrage, the Court must be mindful that outrage is a very limited cause of action. *See, e.g., Thomas*, 624 So. 2d at 1044. The Alabama Supreme Court has found that a jury question exists in only three types of cases: (1) those involving wrongful conduct with regard to family burials; (2) those involving barbaric methods employed to coerce an insurance settlement; and (3) those involving egregious sexual harassment. *See, e.g., Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000) (nurse failed to establish jury question on outrage claim against her employer and former supervisor despite having suffered emotional and physical distress when accused publicly of being a drug addict, thief and danger to the public); *Carter v. Innisfree Hotel, Inc.*, 661 So. 2d 1174 (Ala. 1995) (affirming summary judgment on outrage claim where plaintiffs alleged that a "peeping tom" watched them through scratches in their hotel room's bathroom mirror).

*Leeth v. Athens/Limestone Hosp., Inc.*, 2009 WL 10688796, at *2 (N.D. Ala. July 23, 2009) (citing *Hardesty v. CPRM Corp.*, 391 F. Supp. 2d 1067, 1073 (M.D. Ala. 2005)). That said, the Alabama Supreme Court has specifically held that an IIED claim is potentially viable outside of the three types of cases identified in *Potts*. *Wilson v. Univ. of Alabama Health Servs. Found., P.C.*, 266 So. 3d 674, 677 (Ala. 2017) ("[T]he tort [of IIED] can be viable outside the context of the above-identified circumstances and has previously been held to be so viable.").

It is unclear from the second amended complaint specifically which actions Robinson contends constitute IIED. The relevant paragraph states that "[o]n the incident date, the Defendants, Tackett and McKenna's aforementioned acts perpetrated against Plaintiff, consisted of unprivileged conduct that was negligent and of an extreme and outrageous nature which proximately caused Plaintiff to suffer severe emotional distress. Said Defendants' conduct toward Plaintiff was extreme and outrageous to the point that, under the circumstances, no reasonable person could be expected to endure it." (Doc. 29 at ¶ 24). In other words, the paragraph simply recites the legal standard.

34

The portion of Robinson's response to the motion for summary judgment discussing the IIED claim arguably clarifies this by pointing to: (1) Officer Tackett stopping him without probable cause; (2) Officer Tackett accusing Robinson of being intoxicated; (3) the officers' use of force; and (4) Officer Tackett threatening to "rip [Robinson] out" of the car.  (*See* doc. 57 at 23–25).  Regardless of whether they rise to the level that would support an IIED claim, the first, second, and fourth of these apply to Officer Tackett alone.  Since the Estate is due to be dismissed, the undersigned considers only Officer McKenna's use of force as part of Robinson's remaining IIED claim.[25]

The use of force in this case does not fit into one of the narrow categories in which the Alabama Supreme Court has found a viable IIED claim.  As Robinson notes (doc. 27 at 24), this is not dispositive of the issue.  *See Wilson*, 266 So. 3d at 677.  Nevertheless, no reasonable jury could conclude under the facts of this case that Officer McKenna's actions were "so outrageous in

---

[25] As a former magistrate judge of this court observed, "[i]t is not clear whether, in the context of the use of force by a law-enforcement officer, Alabama law recognizes the tort of outrage as a distinct cause of action from assault and battery." *Felder v. Lukima*, 2014 WL 7048653, at *10 n.6 (N.D. Ala. Dec. 12, 2014).

> To the extent that a use of force may be so extreme and outrageous as to meet the test for an outrage, it also clearly would be an intentional assault and battery. While not every assault and battery may rise to the level of being outrageous, every outrageous use of force would be an assault and battery. There seems to be no reason for the tort of outrage to supplement the remedy of assault and battery when the use of force is the event alleged to have caused the injury; outrage would be subsumed in the assault and battery.

*Id.*  Nevertheless, the undersigned assumes for the purposes of this section that both an IIED claim and an assault and battery claim are available based on Officer McKenna's use of force.

character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  As discussed above, the video evidence shows that Officer McKenna sprayed Robinson in the face with mace for approximately four seconds when Robinson was on the ground but not yet handcuffed.  This does not rise to the level the Alabama Supreme Court has found necessary to support an IIED claim, and Officer McKenna is entitled to summary judgment on that claim.[26]

### c.   Count IV – Negligence (Officer McKenna)

"To establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992).  The "existence of a duty is a legal question to be determined by the Court." *S. Ala. Brick Co. v. Carwie*, 214 So. 3d 1169, 1175 (Ala. 2016).

Defendants contend Robinson has not adequately supported the existence of a duty breached by Officer McKenna.  (Doc. 52 at 24).  They point to Robinson's second amended complaint, which states only that Officer McKenna (along with Officer Tackett) breached duties "including but not limited [to] the Defendant's duty not to touch Plaintiff in the manner they did . . . ." (*Id.*) (quoting doc. 29 at ¶ 26).  Defendants contest that Officer McKenna owed any such duty given the circumstances; instead, they argue Officer McKenna was obligated to assist Officer

---

[26] Robinson's response to the motion for summary judgment seems to contend that several other aspects of the encounter provide support for his IIED claim: Officer McKenna "mock[ing]" Robinson's injuries and denial of medical care.  (Doc. 57 at 25).  Officer McKenna's mockery does not appear in the second amended complaint, which defines the scope of Robinson's claims.  He may not raise new theories of liability through a response to summary judgment.  *Cruz v. Advance Stores Co.*, 842 F. Supp. 2d 1356, 1360 (S.D. Fla. 2012).  As for the claim that Officer McKenna denied Robinson medical care, Robinson testified that he did not know who denied him the opportunity to go to the hospital. (Robinson Depo. at 25 (94:15–21)).  There is no evidence to support that Officer McKenna was involved with that decision.

Tackett in arresting Robinson.  (*Id.*).  Robinson's response to this is that Officer McKenna owed a general duty to "act lawfully and maintain the peace," as well as to "truthfully relate the events that occurred and preserve evidence."[27]  (Doc. 57 at 25).  Robinson contends Officer McKenna violated these duties by "slapping Robinson's hand away from his face so as to apply mace to Robinson's eyes and for his failure to even learn the policy for using mace" as well as "fabricating events regarding the traffic stop that never occurred."  (*Id.* at 26).

Robinson's allegations that Officer McKenna was negligent by fabricating events in his report and by failing to learn the policy for using mace do not match up with the second amended complaint.  The second amended complaint indicates that the negligent actions by the officers were the "acts of unwanted touching."  (Doc. 29 at ¶ 26).  As noted above, Robinson may not rely on new theories of liability not found in the operative complaint.  *See supra*, n.26.  However, Robinson's contention that Officer McKenna could have acted negligently by using excessive force is consistent with Alabama law.  "Under Alabama law, excessive force during an arrest, or assault and battery, can constitute 'unskillfulness' . . . if it 'falls below the response which a skilled or proficient officer would exercise in similar circumstances.'"  *See Fowler v. Meeks*, 569 F. App'x 705, 708 (11th Cir. 2014) (citing *City of Birmingham v. Thompson,* 404 So. 2d 589, 592 (Ala. 1981); *Lee v. Houser*, 148 So. 3d 406, 419 (Ala. 2013)).  The Alabama Supreme Court held in

---

[27] Robinson does not specifically connect this to his negligence claims against Officer McKenna, but he also argues that the "officers fabricated a narrative to justify an illegal stop and within 5 seconds of contacting Robinson, Robinson was threatened with being ripped out of the car with no explanation as to what he had done," which allegedly violated their duties to "protect and serve the public" and "maintain the peace."  (Doc. 57 at 24–25).  Whether or not they are intended to support the negligence count, Robinson's arguments concern only Officer Tackett's actions and are immaterial to Officer McKenna; there is no evidence to support that Officer McKenna had anything to do with the initiation of the traffic stop, and Officer Tackett was the officer who threatened to "rip" Robinson out of the car.

*Thompson* that this qualifies as a "negligent assault and battery." 404 So. 2d at 592. So Defendants are incorrect; theoretically, Robinson could maintain a negligence claim founded on Officer McKenna's duty to refrain from using excessive force. *See id.* The problem for Robinson is that any negligence claims under an excessive force theory are foreclosed for the same reason discussed above in the assault and battery context: the force Officer McKenna used was reasonable. *See supra,* Section IV.B.2.a. Therefore, Count IV is due to be dismissed.

### d. State Immunity

Defendants contend that Officer McKenna is entitled to immunity under two doctrines: peace officer immunity and state agent immunity. (Doc. 52 at 17–20). Under Alabama law, peace officer immunity is a statutory creation:

> Every peace officer and tactical medic, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as a peace officer or tactical medic by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers or tactical medics, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

ALA. CODE § 6-5-338(a). State agent immunity is a judicially created doctrine:

> Under Alabama law, "[s]tate-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." *Ex parte Hayles,* 852 So.2d 117, 122 (Ala. 2002). In *Ex parte Cranman,* 792 So.2d 392 (Ala. 2000), a plurality of the Alabama Supreme Court restated and clarified the scope of Alabama's state-agent immunity doctrine, which bars suit against law enforcement officers effecting arrests, except to the extent the officer acted willfully, maliciously, fraudulently, in bad faith, beyond his legal authority, or

under a mistaken interpretation of law, or if the Constitution or laws of the United States or Alabama require otherwise. *Id.* at 405.

*Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 740–41 (11th Cir. 2010).  However, the test for both is the same.  *Ex parte City of Tuskegee*, 932 So. 2d 895, 904 (Ala. 2005) ("The restatement of State-agent immunity as set out in *Cranman*, 792 So. 2d at 405, now governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a).").  Under *Cranman*, the defendant has the initial burden to demonstrate that he was acting in a discretionary function within the scope of his duties.  *Ex parte Estate of Reynolds,* 946 So. 2d 450, 452 (Ala. 2006).  If the defendant makes that showing, the burden shifts to the plaintiff to show that one of two exceptions applies:

> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
>  (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Ex parte Brown*, 182 So. 3d 495, 503 (Ala. 2015) (cleaned up and citations omitted).

Here, Defendants correctly contend that Officer McKenna, an on-duty police officer backing up another officer during a traffic stop, was "working within the line and scope of his law enforcement duties for the City of Bessemer on October 17, 2018."  (Doc. 52 at 19).  Therefore, Robinson must show that one of the exceptions applies.  Robinson's sole attempt to do so relates to his contention that "Defendant McKenna knew he was violating the constitutional rights of Robinson . . . ."  (Doc. 57 at 22).  As explained above, Officer McKenna did not violate Robinson's constitutional rights.  Therefore, Robinson has failed to meet his burden to show state immunity does not apply.  Accordingly, and in the alternative to the resolution on the merits of Robinson's

state law claims above, Officer McKenna is immune from Robinson's state law claims against him.

### e.  Claims Against the City

Defendants contend the City is immune from Robinson's state law claims against it to the same extent that Officer McKenna is immune.  (Doc. 52 at 20–21).  "It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune."  *Howard v. City of Atmore*, 887 So. 2d 201, 211 (Ala. 2003).  Therefore, the City is immune as to any claims founded on Officer McKenna's conduct.

However, the City has not moved for summary judgment as to its vicarious liability for *Officer Tackett's* actions, notwithstanding that Robinson's direct claims against him are due to be dismissed without prejudice for substitution- or service-related reasons.  *See Hundley v. J.F. Spann Timber, Inc.*, 962 So. 2d 187, 192 (Ala. 2007) (citing *Alfa Life Insurance Corp. v. Jackson,* 906 So.2d 143 (Ala.2005)) (collecting cases for the proposition that dismissal *without* prejudice of claims against an agent does not exonerate the principal from vicarious liability, while dismissal *with* prejudice does).  Officer Tackett's actions are analytically distinct from Officer McKenna's actions, particularly since a jury could conclude that Officer Tackett lacked reasonable suspicion for the stop, knew he lacked the authority to order Robinson out of his vehicle, and thus was not entitled to use force to arrest Robinson under § 13A-3-27(a).  Additionally, the City would not necessarily be entitled to immunity under § 6-5-338 for Officer Tackett's actions because a fact issue exists as to the lawfulness of the stop at the outset.  *See supra*, Section IV.B.1.b.i.; *Howard*, 887 So. 2d at 211 (holding that "if [§ 6–5-338] does not shield the officer, it does not shield the city").  Furthermore, unlike Officer McKenna, Officer Tackett also physically removed Robinson

from the vehicle.  Neither body camera video clearly shows what happened during that process, so a jury could also credit Robinson's testimony that Officer Tackett "grabb[ed Robinson's] neck and just slam[ed him] down to the ground" to conclude that Officer Tackett's use of force was unreasonable.  Because the City has not moved for summary judgment as to its liability for Officer Tackett's conduct, none of these issues have been briefed; the court will not grant summary judgment on a ground on which the City has not moved for it.  *See Amy v. Carnival Corporation*, 961 F.3d 1303, 1311–12 (11th Cir. 2020) (finding a district court erred by deciding summary judgment based on a defense not pled by the defendant in its motion).

## V. Conclusion

For the reasons stated above, Defendants' motion to dismiss Robinson's claims against the Estate of Robbie Tackett (doc. 48) is **GRANTED**, and those claims are **DISMISSED WITHOUT PREJUDICE**.  Defendants' motion for summary judgment (doc. 50) is **GRANTED** as to all claims against Officer McKenna and the portions of Counts II, III, and IV asserted against the City based on Officer McKenna's conduct.  The motion is **DENIED** as to the portions of Counts II (assault and battery) and IV (negligence) asserted against the City based on Officer Tackett's conduct.

The parties are **ORDERED** to confer and to file a joint status report by **February 9, 2024,** concerning next steps in this case.  Specifically, the parties should indicate whether they believe magistrate-judge-led mediation would be beneficial.

DONE this 26th day of January, 2024.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE